## AMBS v. AMBS.

1. DIVORCE—CUSTODY OF CHILDREN—FINDING OF COURT—EVIDENCE.
   In suit for divorce wherein decree was granted husband on his cross bill after wife had withdrawn her bill, evidence sustained finding of trial court that plaintiff who had been living with another man while defendant was performing military duty was not a fit person to have custody of the two children.

2. SAME—CUSTODY OF CHILDREN—ALIMONY FOR SUPPORT.
   Where mother was properly found not to have been a fit person to have custody of the two young children of the parties, and the best interests require that they be brought up together,

custody is transferred to father on his appeal and he is relieved of payment of alimony for their support while they are in his custody.

3. SAME—COSTS—MODIFICATION OF DECREE.

No costs are allowed on defendant father's appeal from decree of divorce as to custody of children, notwithstanding decree was modified so as to award him custody, and relieve him of payment to their mother for support.

Appeal from Kalamazoo; Weimer (George V.), J. Submitted June 6, 1947. (Docket No. 48, Calendar No. 43,563.) Decided October 13, 1947.

Bill by Lettie Ellen Ambs against Roger Harry Ambs for divorce on ground of extreme and repeated cruelty. Cross bill by defendant against plaintiff for divorce on ground of extreme and repeated cruelty. Decree for defendant on cross bill with custody of children awarded to plaintiff. Defendant appeals. Modified and affirmed.

*Troff & McKessy,* for plaintiff.

*Jackson, Fitzgerald, Dalm, Nims, Sage & Wheeler,* for defendant.

REID, J. Plaintiff filed suit for divorce; defendant filed a cross bill and was granted a decree for divorce thereon, plaintiff in the meantime having withdrawn her bill of complaint and having made no contest over the divorce. The only dispute was over the custody of the children of the marriage, Jacqueline Louise, born September 29, 1939, and Richard Lee, born March 26, 1944. The decree awarded custody of both children to the plaintiff, provided, however, that the children shall be kept at the home of plaintiff's sister and her husband, Mr. and Mrs. Clarence Harter, who reside near Paw

Paw. Defendant and cross plaintiff appeals from the award of custody only.

The parties were married on March 3, 1939, and have resided in Michigan during their married life. Neither party had been married before. Excepting for a separation for about 30 or 40 days after a quarrel during the year following their marriage, no misconduct of any sort was proven against appellant.

Cross defendant, appellee, says in one of her letters to appellant, dated October 11, 1945, during his absence in service, "I thought I was perfectly happy and had all I would ever want out of life." That statement seems to describe the married life of the parties, except for the quarrel five years previous to the making of the quoted statement, and until appellee became infatuated with another man during her husband's absence.

Appellee received from the government an allotment of $100 per month as appellant's dependent for herself and the children during appellant's service, but she concluded to work out and arranged that the daughter Jacqueline stay at the home of a Mr. Harold Hubbard and his mother, who were friends of appellee, and owners of the house in which appellee lived.

Shortly after the son Richard was born, appellee took him to the residence of her sister, Mrs. Harter, above mentioned, where he has been taken care of for 18 to 20 months. Mrs. Clair Corey, mother of appellant, testified she always felt free to drop into the home of the parties to this case every two weeks or oftener before appellant went into the United States service, and the parties lived at Mrs. Corey's home for a few months when Jacqueline was less than a year old. Since then Mrs. Corey has had Jacqueline about three months and, also, had Jac-

queline for about two weeks about Christmas, 1944. Mrs. Corey has had the boy Richard for about 10 days only in July, 1945, but frequently called to take him to Mattawan on week-ends.

The circuit judge relied upon his investigator, who investigated the homes of the Hubbards, the Coreys and the Harters, and reported that all three homes are suitable places for the two children to stay.

The circuit judge found among other things as follows:

"The plaintiff has created a terribly deplorable situation. Of course, she could not possibly give her children, or either of them, the true, genuine, honest-to-goodness, motherly, parental care to which they were entitled while she was not only going about with another man frequently at night until midnight and after and actually having another man up in her same apartment.

"I take it from all that has been said about the older child, that she is a bright, intelligent, observing youngster, old enough to know that she had a father, old enough to know that the man that was living with her mother was not her father. How can anybody claim that that is proper parental care, being the sort of a good mother to which every child is entitled. No, there is no excuse for the plaintiff. It was a cruel, heartless thing. She might have had some grievance against her husband; he may be rough and cruel at times. Perhaps it was, with his prolonged absence, a relief from real or imaginary unpleasantness. Perhaps she grasped at the opportunity to become intimate with another man.

"Well, she was able to stand it and accept the hundred dollars a month allotment money until August of 1945; in other words, until the war was over. The European war ended in the spring; the Japanese war ended in August, and then all the wars were over, and she knew that. She knew her

husband was about—should be coming home most any time, perhaps within a few months. She knew that and so finally when confronted with his return, his probable return within the then near future, she decided to let him know that she was through with him. She was able to stand it up to that time; been able to write him letters as a wife should; been entirely willing to accept the allotment money, not only for the children, but for herself, up to that time, and then when she envisaged his probable return, she decided it was time to call it off, and she proceeded to do so.     *     *     *

"One child was one place and the other child was most of the time at another place. She was out working finally. She says her doctor told her she had to get out and circulate among people. Probably he did, but, of course, she doesn't claim, nor could she claim, that her doctor told her to invite men in to stay at her apartment, or to go to the dancing and drinking places and stay until well after midnight, well into the morning. She doesn't claim that her doctor advised the things that she did that were detrimental to her family life. The doctor wouldn't advise that.

"Well, the defendant finally came home. He had been warned not to come home. She had told him as explicitly as possible for one person to tell another to keep out and in spite of it all, he persisted. It is unfortunate. I suppose it is hard for a man to really believe some things.

"He wouldn't believe it. He insisted on staying there for 30 days. She refused to recognize him as her husband, refused to live with him as his wife. Nevertheless, he stayed there."

A careful consideration of the record convinces us that the above cited findings are correct.

In the instant case, the mother's evil example of immoral conduct committed with the knowledge of

her six-year-old daughter and carried on in the same residence where the daughter was living, justifies and requires the conclusion that it is for the best interests of the two children that they should be left in the custody and control of their father, who is without fault, rather than in the control of their mother, who has been so far at fault. We further consider that it would be for the best interests of the two children that they be brought up together in the same household if it is fairly within the ability of their custodian so to do.

A decree may be entered in this Court awarding the custody of the two children of the parties to the father Roger Harry Ambs, appellant, to be kept by and to be under the control of his parents until the further order of the court and providing that, while the two children are provided for by their said father, the award of alimony for the support of said children shall be set aside; and further providing that the case be remanded to the trial court to order terms for visitation by the mother with her children, and also for such further order or orders from time to time as changed conditions shall be found to require. Other provisions in the decree as entered are affirmed. No costs.

CARR, C. J., and BUTZEL, BUSHNELL, SHARPE, BOYLES, NORTH, and DETHMERS, JJ., concurred.